IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLARENDON NATIONAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 C 4245 |
| v. | ) ) | Judge Virginia M. Kendall |
| MARIA MEDINA, GUILLERMO MEDINA, TOWN TRUCKING COMPANY, and JERRY SCHULMAN and MARY FALAT-SCHULMAN, Co-Administrators of the Estate of MICHAEL WALTER SCHULMAN, Deceased, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Clarendon National Insurance Company ("Clarendon") brought suit against Defendants Maria Medina, Guillermo Medina, Town Trucking Company, and Jerry Schulman and Mary Falat Schulman as the co-administrators of the estate of Michael Walter Schulman, deceased (collectively "Defendants") for a declaratory judgment of its insurance liability under a policy issued to Guillermo Medina. The parties have filed cross-motions for summary judgment. For the reasons set forth below, Clarendon's Motion for Summary Judgment is granted and Defendants' Motion is denied.

**STATEMENT OF UNDISPUTED FACTS**[1]

Clarendon, a New Jersey corporation, issued an insurance policy (the "Clarendon policy") to Guillermo Medina ("Guillermo"), which provided coverage for a 1998 Volvo trucking tractor (the

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Defendants' Response to Clarendon's Statement of Uncontested Facts have been abbreviated to "Def. 56.1 Resp. ¶ __."; and citations to Clarendon's Response to Defendants' Statement of Material Facts have been abbreviated to "Pl. 56.1 Resp. ¶ __."

"tractor"). (Def. 56.1 Resp. ¶¶ 1, 6; Pl. 56.1 Resp. ¶¶ 31, 34.) The tractor was owned by Maria Medina ("Maria") and registered in Illinois to her, but Maria did not drive the tractor and did not have a license to do so. (Def. 56.1 Resp. ¶¶ 14-15, 17; Pl. 56.1 Resp. ¶ 17.) Instead, Guillermo drove the tractor with Maria's knowledge and permission in order to work as a truck driver. (Def. 56.1 Resp. ¶¶ 19, 21-25.) Guillermo, with Maria's knowledge and permission, signed at least one agreement with Town Trucking related to the use of the tractor. (Def. 56.1 Resp. ¶¶ 27, 33.) In fact, a Contract Operator Agreement was signed by Town Trucking and Guillermo Medina, and was in effect on the date of the accident at issue here. (Def. 56.1 Resp. ¶ 37.)

With Maria's knowledge and permission, Guillermo obtained the Clarendon policy in order to insure the tractor. (Def. 56.1 Resp. ¶ 28.) Maria paid Insurance Pro Agencies for the policy. (Pl. 56.1 Resp. ¶¶ 27-28.) The Clarendon policy was a form of insurance known within the trucking industry as "bob-tail" insurance,[2] which Town Trucking required its drivers to purchase. (Def. 56.1 Resp. ¶ 11.) The policy contained a provision stating that it "does not apply to . . . a covered 'auto' while in the business of anyone to whom the auto is rented."[3] (Def. 56.1 Resp. ¶ 12.) The policy further required that, "[i]n the event of 'accident', claim, 'suit' or 'loss', you must give us or our authorized representative prompt notice . . . ."[4] (Def. 56.1 Resp. ¶ 13.)

On November 28, 2006, Guillermo was driving the tractor but towing an empty trailer traveling from McHenry, Illinois where he had dropped off a load of freight, to Summit, Illinois in order to pick up another load of the same freight. (Def. 56.1 Resp. ¶ 40.) Guillermo was involved

---

[2] A bob-tail insurance policy provides coverage for a truck operator after cargo has been delivered and while the truck is being used for personal, rather than business-related, transportation. *See* R. 42, Def. Memo., at 1 n.1.

[3] Hereinafter, this Opinion refers to this provision as the "rental exclusion."

[4] Hereinafter, this Opinion refers to this provision as the "notice provision."

in a highway accident, which resulted in the death of Michael Walter Schulman. (Pl. 56.1 Resp. ¶ 10.)

Subsequent to the accident, the Estate of Michael Schulman filed suit in Illinois state court against Guillermo Medina, Maria Medina, and Town Trucking. (Def. 56.1 Resp. ¶ 41.) The parties to that suit have now reached a settlement agreement, under which Occidental Fire and Casualty has paid $997,500 to the Estate of Michael Schulman. (Def. 56.1 Resp. ¶ 43.) During the state court litigation, Maria and Guillermo received a certified letter from a representative of Clarendon notifying them of a declination of coverage and a reservation of Clarendon's rights. (Pl. 56.1 Resp. ¶ 52.) In their settlement agreement, the parties reserved the issue of whether there is additional coverage under the Clarendon policy. (Pl. 56.1 Resp. ¶ 14.)

## **STANDARD OF REVIEW**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ.P 56(c). When determining if a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to

specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'"). On cross-motions for summary judgment, each movant must satisfy Federal Rule of Civil Procedure 56's requirements. *See Cont'l Cos. Co. v. Northwestern Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005).

## DISCUSSION

**I. Whether the Tractor was Rented to Town Trucking**

At the core of the dispute between the parties is the question of whether, at the time of the accident, the 1998 Volvo was "rented" by Guillermo to Town Trucking, or whether he was operating the tractor as an independent contractor. If the tractor was "rented," then the rental exclusion applies and Clarendon has no liability under the policy, as the parties do not dispute that Guillermo was driving on behalf of Town Trucking, rather than for personal reasons, at the time of the accident.[5] If the rental exclusion applies, then the Court need not decide the other issue contested by the parties, which is whether adequate and timely notice of the accident was given to Clarendon. Thus, the Court will analyze the potentially-dispositive rental issue first.

Title 49 of the Code of Federal Regulations requires that a federally-authorized motor carrier, which Town Trucking is, "may perform authorized transportation in equipment it does not own only under the following conditions . . . ." 49 C.F.R. § 376.11. Primary among those conditions is a

---

[5] Even if this issue were disputed, it is clear that a trucker's assignment does not end at the point of delivery, but "continues at least until the owner-driver returns to the point where the haul originated . . . ." *St. Paul Fire & Marine Ins. Co. v. Frankart*, 370 N.E.2d 1058, 1062 (Ill. 1977).

4

requirement that "[t]here shall be a written lease granting the use of the equipment and meeting the requirements" set for elsewhere in the regulation. *Id.* § 376.11(a).

Defendants claim that Town Trucking was allowing Guillermo to transport goods on its behalf in a truck that it neither owned nor leased, but only paid Guillermo to operate as an independent contractor. Defendants assert that Guillermo could not possibly have leased the tractor to Town Trucking, because he did not own it and because Maria did not give him explicit permission to sign such a lease. The Contractor Operating Agreement entered into between Guillermo Medina and Town Trucking with Maria's full knowledge and permission was, Defendants assert, only an agreement that Guillermo would act as an independent contractor, and not a lease.[6]

### A. Applicable Federal Regulations

Clarendon asserts that as a matter of law, the Contractor Operating Agreement must be a lease, because the vehicle could not have legally operated to transport goods in interstate commerce unless it was leased to Town Trucking. *See Cox v. Bond Transp., Inc.*, 249 A.2d 579, 587 (N.J. 1969) ("When [ ] a carrier engages an owner-operator of a tractor intending to have him transport goods for it on the public highways in interstate commerce . . . the [federal] regulations must be deemed included in their contract."). The agreement itself states that Town Trucking's business "is subject to regulation by the Federal Government acting through the Federal Motor Carrier Safety Administration of the Department o[f] Transportation . . . ." (*See* R.35, Ex. 3, Contractor Operating Agreement, at 1) (hereinafter "COA"). A comparison between the applicable federal regulations and the Contractor Operating Agreement signed here sheds some light on the implicit, if not the nominal, nature of the agreement.

---

[6] Defendants do not address in their briefing the necessary implications of this position with respect to Town Trucking's failure to comply with federal regulations.

Title 49 C.F.R. § 376.12(a) requires that a lease of a vehicle to an authorized carrier be made between the authorized carrier and the owner of the equipment, and signed by the parties or by their authorized representatives. Here, the Contractor Operating Agreement is signed by Guillermo and by a representative of Town Trucking. There is no evidence in the record demonstrating that Town Trucking was aware that Guillermo was not the legal owner of the tractor at the time the agreement was signed.

Section 376.12(b) states that the "lease shall specify the time and date or the circumstances on which the lease begins and ends." The Contractor Operating Agreement provides that it shall continue for one year from the date "above written and continuously thereafter on a year-to-year basis unless canceled by at least one days' written notice" and otherwise provides for the termination of the agreement. COA § 20; 30.

Section 376.12(c) requires that a lease under it grant the carrier-lessee "exclusive possession, control, and use of the equipment for the duration of the lease" and that the carrier-lessee "assume complete responsibility for the operation of the equipment for the duration of the lease." Section 3(d) of the Contractor Operating Agreement requires the contractor to furnish to the carrier "the exclusive possession, use and control" of the equipment. Section 376.12(d) requires the lease to specify the compensation to be provided; the Contractor Operating Agreement attaches an Addendum B setting forth the compensation in accordance with the specific provisions of the regulation.

The following sections of 49 C.F.R. § 376.12 provide for an array of requirements to be met in any lease between a carrier in interstate commerce and a lessor of equipment. The Contractor Operating Agreement complies with these requirements in all material respects. *See, e.g.*, COA §

5 (complying with 49 C.F.R. § 376.12(f)); COA § 10 (complying in part with 49 C.F.R. § 376.12(e)); COA § 28 (complying with 49 C.F.R. § 376.12(g)); and COA § 29 (complying with 49 C.F.R. § 376.12(i)).

The Court finds it highly implausible that a document which comports with all of the applicable federal regulations for a lease between carrier and lessor was not intended to, in fact, constitute such a lease. Town Trucking has not specifically admitted that it was in the habit of violating federal regulations by allowing "contractors" to operate equipment that it neither owned nor leased, and it seems likely that the Contractor Operating Agreement would have been presented as a lease had federal officials come calling. In the end, a lease by any other name has the same legal effect, and the Court cannot allow Town Trucking to claim all the regulatory protections, but none of the adverse consequences, of entering into a lease with Guillermo Medina simply by calling the relevant document a "Contractor Operating Agreement."

### B. Implied Lease by Operation of Law[7]

The Contractor Operating Agreement is thus a lease within the meaning of the applicable federal regulations. Even if it were not, however, a lease between a motor carrier and an individual trucker may be implied where none is written, if the conduct of the parties merits such an implication. *See Zamalloa v. Hart*, 31 F.3d 911, 917-18 (9th Cir. 1994). As described above, the conduct of the parties in entering into an agreement that, for all intents and purposes, appears to be a lease between Guillermo and Town Trucking, provides an ample basis upon which this Court can

---

[7] The insurance policy lacks an express choice-of-law provision, but all parties appear to be in agreement that Illinois law governs the resolution of this dispute. This is appropriate, as the policy insured an Illinois driver located in Illinois, the vehicle was registered in Illinois, and all relevant factors including the location of the accident direct an application of Illinois law. *See Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 655 N.E.2d 842, 845 (Ill. 1995) (quotation omitted).

imply as a matter of law that the Contractor Agreement was, in fact, a lease. *See Nissan N. Am., Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989, 996 (7th Cir. 2007) ("Illinois law [ ] recognizes contracts which owe their existence to and whose terms are defined by the parties' conduct or actions."); *see, e.g., Northland Ins. Co. v. Bennett*, 533 N.W.2d 867, 872 (Ct. App. Minn. 1995) (upholding an implied trucking lease on the basis of the totality of the contacts between carrier and lessor and "the strong public policy interests in this area of law").

However, Defendants argue that the public policy rationale underlying the leasing requirement is to increase the scope of liability arising from trucking accidents by preventing carriers from disclaiming responsibility for the acts of their contractors, and that this public policy would be violated by allowing Clarendon to limit its exposure through the implication of a lease that does not exist. *See Zamalloa*, 31 F.3d at 917-18; *see also Planet Ins. Co. v. Transport Indem.*, 823 F.2d 285, 286-87 (9th Cir. 1987) (the intent of the leasing regulations was "to impose financial responsibility requirements upon authorized carriers to protect the public.") It is true that finding that there is an implied lease here would work to restrict liability, in the sense that Clarendon's policy will not cover the accident if the tractor was leased to Town Trucking. However, implying a lease based on the conduct of the parties and a written document that strongly resembles a lease in a sense vindicates the public police of the leasing requirements, because the regulations are intended "to prevent licensed carriers from . . . claiming that their lessor-drivers [are] independent contractors rather than employees." *St. Paul Fire & Marine Ins. Co. v. Frankart*, 370 N.E.2d 1058, 1060 (Ill. 1977). Thus, the goal of the regulations is not just to maximize liability and protection for members of the public who must share the roads with carriers' lessors and employees. More broadly, the goal of the regulations is to ensure that carriers cannot disguise their lessors and employees as something

8

that they are not—as independent contractors. But this is precisely what the Defendants are attempting to do here by disguising the lease into which Guillermo Medina and Town Trucking entered as an Independent Contracting Agreement.

Finally, Defendants argue that a lease cannot be implied between Clarendon and a party, Guillermo Medina, who was not the owner of the tractor. In light of the undisputed facts showing that Guillermo used the truck with Maria's express knowledge and permission, and entered into an agreement with Town Trucking regarding its use with her knowledge and permission, the Court does not find Guillermo's lack of actual ownership a bar to finding that he entered into a lease with Clarendon. Tellingly, Defendants have presented no legal authority for this proposition. Title 49 C.F.R. § 376.12(a) allows the lease to be signed by the authorized representatives of the carrier and the owner of the equipment at issue, and the facts clearly demonstrate that Guillermo was the representative of Maria Medina in all matters having to do with the tractor.

The Contractor Operating Agreement entered into between Guillermo and Town Trucking therefore constituted a lease by operation of federal regulations and basic principles of contract law. Because the parties do not actively dispute that Guillermo was operating the tractor on Town Trucking's behalf at the time of the accident, Guillermo was therefore operating the tractor while in the business of someone to whom the tractor was leased at the time of the accident. As a result, the rental exclusion of the Clarendon insurance policy relieves Clarendon from any obligation to provide coverage in this instance.

**II. Whether Clarendon Received Adequate Notice of the Accident**

Due to its holding that the rental exclusion of the policy applies, the Court need not decide the parties' alternative argument, that Clarendon is excused from providing coverage because of the Medinas' failure to adequately comply with the notice provision.

## **CONCLUSION AND ORDER**

The Contractor Operating Agreement under which Guillermo Medina operated his wife's tractor on behalf of Town Trucking constitutes a lease both pursuant to applicable federal regulations and by operation of law. Guillermo was operating the tractor in Town Trucking's business at the time of the accident that resulted in the death of Michael Walter Schulman. As a result, the rental exclusion of the bob-tail insurance policy that Guillermo obtained from Clarendon applies, and Clarendon has no obligation to provide coverage under the policy.

Clarendon's Motion for Summary Judgment is granted in its entirety. Defendants' Motion for Summary Judgment is denied.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 18, 2010